# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

Filed: April 30, 2026

```
* * * * * * * * * * * * * *    *
RUSSELL PROBST,               *
                              *
            Petitioner,       *      No. 22-1757V
                              *
v.                            *      Special Master Young
                              *
SECRETARY OF HEALTH           *
AND HUMAN SERVICES,           *
                              *
            Respondent.       *
* * * * * * * * * * * * * *    *
```

*David J. Schexnaydre*, Schexnaydre Law Firm, LLC, Mandeville, LA for Petitioner.
*Julianna R. Kober*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

On January 7, 2025, Russell Probst ("Petitioner") filed a motion for attorneys' fees and costs, requesting **$31,256.37** for the work of his counsel. Pet'r's Mot., Ex. 2 at 7, ECF No. 35-2. This amount consists of $24,730.00 in fees and $6,526.37 in costs. *Id.* On January 21, 2025, Respondent filed his response and objection to Petitioner's motion. Resp't's Response, ECF No. 38. In his response, Respondent stated his opposition, asserting that the medical records provide "no objective basis for the alleged vaccine-related injury" and thus Petitioner "cannot establish that this claim has a reasonable basis." *Id.* at 1. Respondent also questioned good faith. *Id.* at 11 n.7, 12 n.8. Petitioner filed a reply brief on February 5, 2025. Pet'r's Reply, ECF No. 39. For the reasons stated below, I find that Petitioner's claim did not have a reasonable basis, and he is therefore not entitled to fees and costs.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

## I.    Procedural History

Petitioner filed his petition on December 1, 2022. Pet., ECF No. 1. Petitioner alleged that he suffered "personality changes," including "loss of patience, loss of interest in life, [and] being easily angered[,]" as well as "a loss of taste, a loss of thirst, and insomnia," as the result of the tetanus-diphtheria-acellular pertussis ("Tdap") vaccine administered on November 30, 2019. *Id.* at 1–2. Petitioner filed an affidavit, a supplemental affidavit, and medical records on April 3, 2023. Pet'r's Exs. 1–6, ECF No. 8. Petitioner filed additional medical records on July 27, 2023. Pet'r's Ex. 7, ECF No. 11. On February 5, 2024, Respondent filed a status report arguing that this case is not appropriate for compensation. ECF No. 19. Respondent stated he did not believe that Petitioner established a cognizable diagnosis. *Id.* at 1. Petitioner filed additional records on March 15, 2024, and May 16, 2024. Pet'r's Exs. 8–11, ECF No. 22; Pet'r's Exs. 12–14, ECF No. 24.

On June 13, 2024, I held a status conference. ECF No. 26. Respondent maintained his position that he did not believe this matter was appropriate for compensation. *Id.* at 1. Petitioner indicated he wanted to move forward, if possible, with an amended petition reflecting an alleged injury of encephalopathy. *Id.*

On July 17, 2024, Petitioner filed a motion to dismiss,[2] stating that "an investigation of the supporting facts and science has demonstrated to the Petitioner that he will be unable to provide the information requested by the court to supplement Petitioner's claim that he is entitled to compensation in the Vaccine Program." ECF No. 28 at 1. He further stated that "[i]n these circumstances, to proceed any further would be unreasonable, and would waste the resources of the Court, the [R]espondent, and the Vaccine Program." *Id.*

On July 22, 2024, I issued a decision dismissing the case for insufficient proof stating that "[t]he information in the record [] does not show entitlement to an award under the Program." ECF No. 29 at 1. On July 25, 2024, Petitioner filed a motion to redact the decision, requesting that I redact "certain verbiage" on the grounds that "they will likely cause a reader to equate Petitioner's symptoms with psychological injuries, which hold a certain stigma in our society, and could prevent Petitioner from seeking certain occupations if he is able to do so in the future." ECF No. 30 at 1–2. I issued a decision denying this motion on August 1, 2024, as Petitioner had "not mentioned any specific occupation or barriers to entry for that profession," and further that a "general preference for privacy does not meet the criteria for redaction." ECF No. 33 at 3.

On January 7, 2024, Petitioner filed a motion for attorneys' fees and costs. Pet'r's Mot. On January 21, 2025, Respondent filed a response opposing Petitioner's motion and requesting that fees and costs be denied because a reasonable basis for the claim was lacking. Resp't's Response at 1. Petitioner filed a reply on February 5, 2025, arguing he did have a reasonable basis. Pet'r's Reply. This matter is now ripe for consideration.

---

[2] Two days earlier, on July 15, 2024, Petitioner filed a motion for ruling on the record, which was substantively the same as his motion to dismiss. ECF No. 27. On July 22, 2024, I issued a non-PDF order finding as moot Petitioner's motion for ruling on the record.

## II.    Relevant Medical History

At the time of vaccination, Petitioner was 60 years old. Pet'r's Ex. 3 at 24. He had a medical history significant for anxiety, fatigue, and insomnia; syncope attributed to chemical poisoning; intermittent irritability; tinnitus; ulnar nerve entrapment; and chronic gastrointestinal symptoms including abdominal pain, gastritis, colitis, and gastroesophageal reflux diseases. *Id.* at 97 (describing "extensive GI history"), 165, 254; Pet'r's Ex. 4 at 21, 23, 25, 27–33. Petitioner received primary care from naturopathic doctor, Lisa Chambers Pate, and was treated with ivermectin for chronic Strongyloides (round worm), and parasitic and fungal infections on numerous occasions. Pet'r's Ex. 4 at 21, 23, 25, 27–33. During a visit with Dr. Pate on April 8, 2015, more than four years prior to vaccination, Petitioner reported problems with "focus, thinking, memory fog[,] and fatigue." *Id.* at 27. Those symptoms had reportedly been present since "having a parasitic infection[] and fungal infection." *Id.* He also reported shortness of breath, stating that he had been diagnosed with isocyanide poisoning resulting in chemical asthma by a pulmonologist due to history of painting cars and exposure to "many volatile organic compounds." *Id.*

On November 30, 2019, Petitioner presented to the emergency department ("ED") for a leg laceration and "[b]lunt head trauma." Pet'r's Ex. 3 at 32. Petitioner was knocked off a ladder by a falling tree branch and fell fourteen feet to the ground. *Id.* at 24. Petitioner hit his head on the ground and thought the limb hit him in the head as well. *Id.* Due to the laceration, Petitioner received a Tdap vaccination. *Id.* at 32. His head injury was diagnosed as "a minor head injury." *Id.* at 86.

The next time Petitioner sought medical attention was approximately nine months later, on August 20, 2020. Pet'r's Ex. 7 at 1. Petitioner presented to Dr. Pate reporting "[n]ot too much of a change in [the] past few years." *Id.* He reported that he was not sleeping well due to increased urination, which began after he slipped while walking downstairs. *Id.* He reported that he caught himself but it "felt as though all [his] organs dropped inside." *Id.* He also reported that he "hasn't had much interest in doing much recently" and that "when he doesn't feel well his energy is very low." *Id.*

His next visit was on January 18, 2022, when Petitioner returned to Dr. Pate "to discuss personality changes and other reactions after receiving Tdap vaccine." Pet'r's Ex. 4 at 19. During this visit, he reported that he fell off a ladder in 2019, cut his leg, and received a tetanus vaccine. *Id.* He reported that he felt a "significant personality change," including "loss of patience, loss of interest in life, easily angered, and insomnia" that "occurred quickly after Tdap [vaccination] and ha[d] not improved." *Id.* He also reported that he lost his sense of taste after vaccination and no longer felt thirst. *Id.* A physical examination was normal, and he was prescribed several naturopathic medications. *Id.* at 19–20.

On February 28, 2023, Petitioner presented to neurologist, James Houser, M.D., to "check for brain damage." Pet'r's Ex. 5 at 8. History of present illness stated:

> He had a tetanus vaccination after sustaining a laceration in 11/2019. Within the
> next day or two he [developed] a number of symptoms insomnia;[3] dec[reased]

---

[3] Review of symptoms indicated "no sleep disturbances: insomnia." Pet'r's Ex. 5 at 6.

> appetite -- even when he has the urge to eat food that he typically enjoys, he will have an aversion to it once he starts to eat -- he has to force himself to eat (he's lost 36 lbs since 2019);[4] impatient; chronic tinnitus worsened.[5] He can't even go fishing (which he loves) because he becomes impatient when preparing the boat. These symptoms have persisted and he's seen no improvement. No workup. He saw his naturopathic doctor who gave him glutathione injections which didn't help. He denies major stressors but has had to move his parents in w[ith] him for their care.

*Id.* Review of symptoms indicated Petitioner "reports feeling fine." *Id.* Petitioner denied many things in the review of his symptoms including weight loss, fatigue, tinnitus, increased urination, muscle loss, nervousness, depression, or sleep disturbances. *Id.* "[Review of symptoms] as noted in the [history of present illness]" was also recorded. *Id.* Physical examination, including neurologic, was normal. *Id.* Dr. Houser noted that Petitioner "[developed] symptoms immediately after the tetanus vaccine and they've persisted. No other explanation. Some of his symptoms suggest possibility of anxiety/depression." *Id.* at 7. Dr. Houser listed diagnoses of a "[v]accine adverse reaction" and anxiety and prescribed sertraline. *Id.*

On March 16, 2023, Dr. Houser wrote a letter to Petitioner's counsel to address his questions about Petitioner. Pet'r's Ex. 5 at 15. He wrote that Petitioner's

> symptoms started immediately after the tetanus vaccine, however, there is no way to know for sure if that is the cause of his chronic symptoms. I don't consider his symptoms to be an encephalopathy. Some of his symptoms suggest anxiety/depression and the fact that the [Z]oloft I prescribed caused side effects, does not mean that he is not anxious or depressed. Some people cannot tolerate that class of medication.

*Id.* Dr. Houser concluded that he did not "have any other explanation for [Petitioner's] symptoms other than the tetanus vaccine but [that] these would be unusual, post-vaccine symptoms." *Id.*

## III.    Petitioner's Affidavits

Petitioner submitted two affidavits. Pet'r's Exs. 1, 6. In his first affidavit, executed on December 1, 2022, Petitioner averred he received a tetanus vaccine on November 30, 2019. Pet'r's Ex. 1 at ¶ 2. He reported that he did not experience any symptoms on the date of vaccination. *Id.* at ¶¶ 3–4. "At some point during the first week after receiving the tetanus vaccination . . . he began experiencing symptoms of personality changes (loss of patience, loss of interest in life, being easily angered)[,] a loss of taste, a loss of thirst, and insomnia." *Id.* at ¶ 4. Petitioner stated he began treating for those symptoms with Dr. Pate "regularly since shortly after receiving the tetanus vaccine in November 2019." *Id.* at ¶ 6. He averred Dr. Pate diagnosed him with "personality changes (loss of patience, loss of interest in life, being easily angered)[,] a loss of taste, a loss of

---

[4] Review of symptoms indicated "no significant weight loss." Pet'r's Ex. 5 at 6.
[5] Review of symptoms indicated "no difficulty hearing and ringing in the ears (tinnitus)." Pet'r's Ex. 5 at 6.

thirst, and insomnia as a result of the tetanus vaccination." *Id.* at ¶ 5. As of the date of this affidavit, Petitioner continued to experience these symptoms. *Id.* at ¶ 7.

In a second affidavit, dated April 3, 2023, Petitioner again stated he received a tetanus vaccine on November 30, 2019, and

> [a]t some point during the first week of December 2019, . . . Petitioner began experiencing symptoms of personality changes (loss of patience, moodiness, agitation, negative thoughts, loss of interest in like (i.e., no desire to fish or anything else), being easily angered), along with forgetfulness, inability to concentrate, inability to solve problems, a loss of taste, a loss of thirst, and insomnia.

Pet'r's Ex. 6 at ¶ 4. Petitioner stated he "had no reason to associate his symptoms with the vaccine," but was treated by Dr. Pate on August 20, 2020 to address the insomnia. *Id.* at ¶ 5. "It was not until January 2022 that Petitioner read something online associating the types of symptoms he was experiencing to a [Tdap] vaccine." *Id.* at ¶ 6. "At that point, he returned to Dr. Pate for treatment of his personality changes . . . as a result of the tetanus vaccination." *Id.*

Petitioner averred that after filing his petition in this case, and at the suggestion of counsel, Petitioner visited neurologist Dr. Houser for an opinion from a medical doctor. Pet'r's Ex. 6 at ¶ 9. Petitioner recalled that

> [u]pon the first visit, Dr. Houser attempted to rule out depression and prescribed Zoloft. Petitioner was not fond of the idea because he does not like to take pharmaceutical products, but went along with the suggestion. After taking just one dose, he began experiencing headaches and shivers and could get hardly any sleep at all. After reading the [] article published by the University of New South Wales in Sydney, Australia, Petitioner found that he had the same symptoms found in patients treated with anti-depressants who were not depressed. Because of the symptoms and the information researched by Petitioner, he called Dr. Houser and advised of the side-effects. Dr. Houser instructed Petitioner to stop taking the Zoloft. Dr. Houser offered to prescribe a different antidepressant, Effexor, but Petitioner did not want to risk experiencing side-effects from that medication.

*Id.* Petitioner averred that in a report dated March 16, 2023, "Dr. Houser concluded that while Petitioner's symptoms were unusual, Dr. Houser did not have any explanation for Petitioner's symptoms other than the tetanus vaccine." *Id.* at ¶ 10. Petitioner acknowledged that "like all side effects from vaccines, which are statistically very low, an adverse event from a tetanus vaccine is not the norm, but that the Vaccine Injury Compensation Program exists for the very purpose of addressing unusual adverse events from vaccines." *Id.* at ¶ 11.

Petitioner explained that "[b]ecause of a prior negative experience" with "medical doctors," he decided to "cease treatment with any [m]edical [d]octor for his vaccine injury but w[ould] continue treatment with Dr. Pate [a naturopathic doctor] as funds are available." Pet'r's Ex. at ¶ 12. He added because of his experience with medical doctors "failing to accurately diagnose and treat his condition, after experiencing side effects from pharmaceutical products, and

after getting good results from a [n]urse [p]ractitioner and a [n]aturopathic [d]octor," Petitioner did not wish to be treated by medical doctors and instead "trusts Dr. Pate and will only continue further treatment with her." *Id.* at ¶ 17. Petitioner stated he treated with Dr. Pate on two more occasions, in January and February 2022, "but could not afford to continue treatments because Dr. Pate only accepts private payments and does not accept insurance." *Id.* ¶ 7.

Petitioner then explained his prior medical history and explained the only medical provider he treated with in the three years prior to vaccination was Dr. Pate. Pet'r's Ex. 6 at ¶¶ 13–16, 18.

## IV.     Parties Contentions

### A.  Respondent

Respondent stated his opposition to Petitioner's motion, asserting this claim lacks a reasonable basis because "there was insufficient evidence that [P]etitioner suffered from a medically recognizable diagnosis—at most, [P]etitioner alleges a collection of symptoms." Resp't's Response at 10. Thus, Respondent opined that "at the outset, there was no reasonable basis for bringing the petition as there was no cognizable injury." *Id.* Respondent argued that "[e]ven if the Special Master finds reasonable basis existed at the time the petition was filed, then reasonable basis was lost after the review of [P]etitioner's medical records." *Id.*

According to Respondent, the medical records do not establish a reasonable basis for the petition.[6] Resp't's Response at 10. On August 20, 2020, almost nine months after vaccination, Petitioner presented to his naturopathic provider reporting "not too much of a change in past few years." *Id.* (citing Pet'r's Ex. 7 at 1). Yet, in his December 1, 2022, and April 3, 2023 affidavits, Petitioner asserted that during the first week of December 2019, he developed personality changes "including loss of patience, loss of interest, and being easily angered, as well as forgetfulness, difficulty concentrating, loss of taste and thirst, and insomnia." *Id.* (citing Pet'r's Ex. 1 at 1–2; Pet'r's Ex. 6 at 1–2). Respondent argued that these "affidavits made in preparation for litigation are in direct conflict with [P]etitioner's medical records closer in time to the alleged injury." *Id.* at 11.

Rather, it was not until January 18, 2022, over 25 months after vaccination and almost 17 months since his last medical visit "(and after [P]etitioner read an article about vaccine-related injuries), that he presented to his naturopathic provider with concerns for a vaccine-related injury." Resp't's Response at 11 (citing Pet'r's Ex. 4 at 19–20; Pet'r's Ex. 6 at ¶ 6 (Petitioner affirming that it was not until January 2022 that he "read something online associating the types of symptoms he was experiencing to a [Tdap] vaccine," and it was "[a]t that point, [that] he returned to Dr. Pate for treatment of his personality changes")). During this visit, Petitioner reported a "significant personality change," that occurred quickly after vaccination and had not improved. *Id.* (quoting Pet'r's Ex. 4 at 19–20). Respondent pointed out that Petitioner did not report any of these symptoms at his visit on August 20, 2020. *Id.* Because of this, Respondent also questioned whether

---

[6] Respondent also noted that the medical records indicate Petitioner had a psychiatric history consistent with the symptoms he allegedly experienced in the months after vaccination. Resp't's Response at 10 (citing Pet'r's Ex. 6 at 3; Pet'r's Ex. 3 at 97–98, 102, 105, 165, 254–56; Pet'r's Ex. 4 at 21, 23, 25, 27, 30–31).

the petition was made in good faith. *Id.* at 11 n.7. "The evidence here suggests that [P]etitioner did not genuinely believe that he suffered a compensable vaccine-related injury." *Id.* "Petitioner had no good faith basis to suspect vaccination caused his injuries as more than nine months after vaccination, he had not experienced any new symptoms." *Id.*

Then on February 28, 2023, 38 months after vaccination and after the petition was filed, Petitioner presented to Dr. Houser reporting that "one to two days after vaccination he developed a number of symptoms including insomnia, decreased appetite, impatience, and worsening of chronic tinnitus, which all persisted." Resp't's Response at 11 (citing Pet'r's Ex. 5 at 6–7; Pet'r's Ex. 6 at 2–3). "While Dr. Houser was confused as to how a vaccine could cause these alleged symptoms, he concluded that there was '[n]o other explanation' for his symptoms." *Id.* (quoting Pet'r's Ex. 5 at 7). However, Respondent pointed out that Petitioner "neglected to report to Dr. Houser the blunt head trauma that he sustained on the date of vaccination and his long history of similar symptoms which he previously attributed to alternate causes." *Id.* at 11–12. Therefore, Respondent argued, "Dr. Houser's sweeping, conclusionary statements regarding vaccination do not rise to more than a scintilla of evidence to support a reasonable basis for this claim." *Id.* at 12.

Finally, Respondent discussed that while Petitioner explored the possibility of amending the claim to include encephalopathy, "there was no evidence to suggest that [P]etitioner had encephalopathy." Resp't's Response at 12. In Dr. Houser's March 16, 2023 letter, he wrote that "there was no evidence that [Petitioner] had an encephalopathy." *Id.* (citing Pet'r's Ex. 5 at 15). "Yet, at the status conference on June 13, 2024, nearly a year and a half later, [Petitioner's] counsel represented that [P]etitioner wanted to possibly move forward with an amended petition reflecting an alleged injury of encephalopathy." *Id.* This was despite Petitioner's treating neurologist who "explicitly stated that there was no evidence of encephalopathy, and there was no clinical exploration of the diagnosis, undercutting any assertion that a reasonable basis existed for pursuing a claim on the basis of that injury." *Id.* Respondent argued this also goes to the issue of good faith. *Id.* at 12 n.8.

Respondent added that "the medical records were insufficient to prove [P]etitioner's claim, and [P]etitioner did not file a supportive opinion on causation from an expert witness." Resp't's Response at 13. Respondent concluded that this "utter lack of objective evidence in support of the alleged diagnosis – the only injury that [P]etitioner actually alleged – is fatal to any possibility of reasonable basis for [P]etitioner's claim." *Id.*

## B. Petitioner

Petitioner did not address reasonable basis in his initial filing but responded to Respondent's opposition in his reply brief. Petitioner's counsel stated that his client contacted him on November 28, 2022, indicating he received the Tdap vaccine on November 30, 2019, and that his first symptoms occurred within the first week of vaccination. Pet'r's Reply at 4. Petitioner told his counsel "that his current physician opined regarding a causal connection between the [Tdap] vaccine and Petitioner's symptoms." *Id.* Given this information and the "extremely limited time to investigate the case and obtain medical records before the filing deadline," Petitioner's counsel moved forward with filing the petition within three days of being contacted by Petitioner "so as not to time bar Petitioner's claim." *Id.*

As the case proceeded, "the best evidence [Petitioner's] counsel was able to submit was a letter from Petitioner's naturopathic doctor that Petitioner's symptoms were suggestive of encephalopathy." Pet'r's Reply at 4. Counsel also learned that "Petitioner was unwilling to undergo additional scans and take additional pharmaceutical products to try and more specifically diagnose his condition because he [] had very bad reactions to pharmaceutical drugs in the past." *Id.* After the June 13, 2024 status conference, Petitioner had the opportunity to file an amended petition reflecting encephalopathy as the alleged injury. *Id.* However, knowing "that Petitioner was too afraid to undergo scans or take additional pharmaceutical drugs to try and pinpoint his condition, [Petitioner's] counsel chose not to lengthen this litigation and chose to simply ask the court for a ruling on the record." *Id.* Petitioner likened this scenario to cases where "there may be reasonable basis at the time that a claim is filed, which then dissipates as the claim proceeds." *Id.* at 4–5.

## V.    Standards of Review

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id.*; *see Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). Vaccine Program attorneys are not automatically entitled to a fees award in unsuccessful cases like this one. At a minimum, such a claim must be shown to have: (1) possessed reasonable basis; and (2) have been brought in good faith. § 15(e)(1); *see, e.g.*, *Chuisano v. Sec'y of Health & Hum. Servs.,* 116 Fed. Cl. 276, 284 (2014). Reasonable basis is an objective inquiry while good faith is a subjective inquiry. *Id.* at 289.

### A.    Reasonable Basis

To obtain attorneys' fees pursuant to a Vaccine Act claim, the petitioner must have a reasonable basis to support all elements of the claim for which the petition is brought, including causation. *Cottingham ex rel. K.C. v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1345–46 (Fed. Cir. 2020) (citing 42 U.S.C. §§ 300aa11(c)(1), 300aa–15(e)(1)). An analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *6–7 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). While the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano*, 116 Fed. Cl. at 283. The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham*, 971 F.3d at 1346 (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert and clarifying that "the failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion"). Indeed, determining what constitutes "more than a mere scintilla" is a "daunting task." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 15-1291V, 2021 WL 3085502, at *13 (Fed. Cl. Spec. Mstr. July 21, 2021).

While the Court in *Cottingham* did not purport to identify all forms of objective evidence reflective of reasonable basis, it stated that "objective medical evidence, including medical records . . . even where the records provide only circumstantial evidence of causation" can support a showing of reasonable basis. *Cottingham,* 971 F.3d at 1346 (citing *Harding v. Sec'y of Health & Hum. Servs.,* 146 Fed. Cl. 381, 403 (2019)). The *Cottingham* Court also reiterated that the

reasonable basis determination is still based on a "totality of the circumstances." *Cottingham,* 971 F.3d at 1346.

In another recent opinion regarding reasonable basis, the Federal Circuit stated that medical records, affidavits, and sworn testimony all constitute objective evidence to support reasonable basis. *James-Cornelius v. Sec'y of Health & Hum. Servs.,* 984 F.3d 1374, 1379–81 (Fed. Cir. 2021). The Circuit further clarified that "absence of an express medical opinion on causation is not necessarily dispositive of whether a claim has reasonable basis." *Id.* at 1379 (citing *Cottingham*, 971 F.3d at 1346). When determining if a reasonable basis exists, many special masters and judges consider a myriad of factors. The factors to be considered may include "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Hum. Servs.,* 138 Fed. Cl. 282, 289 (2018). This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.,* No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

Additionally, there may be reasonable basis at the time that a claim is filed, which then dissipates as the claim proceeds. *R.K. v. Sec'y of Health & Hum. Servs.,* 760 F. App'x 1010, 1012 (Fed. Cir. 2019) (citing *Perreira v. Sec'y of Health & Hum. Servs.,* 33 F.3d 1375, 1376–77 (Fed. Cir. 1994) holding that "an award of fees and costs was not authorized for work performed on a case after a claim lost its reasonable basis"). If reasonable basis is lost, "[p]etitioners' counsels have an obligation to voluntarily dismiss a Vaccine Act claim once counsel knows or should know a claim cannot be proven." *Cottingham v. Sec'y of Health & Hum. Servs.,* 134 Fed. Cl. 567, 574 (2017) (citing *Perreira*, 33 F.3d at 1376; *Curran v. Sec'y of Health & Hum. Servs.,* 130 Fed. Cl. 1, 6 (2017); *Allicock v. Sec'y of Health & Hum. Servs.,* 128 Fed. Cl. 724, 727 (2016)).

**B. Good Faith**

The "good faith" requirement of section 15(e)(1) is a subjective standard that focuses upon whether petitioner honestly believed he had a legitimate claim for compensation. *See Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5. "Evidence that petitioner held an honest belief that he has sustained a vaccine-related injury is sufficient to establish that his vaccine claim was brought in good faith." *Turner*, 2007 WL 4410030, at *5. Moreover, without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.,* 36 Fed. Cl. 114, 121 (1996).

## VI.    Analysis

### A.  Reasonable Basis

After careful review of the record,[7] I find that Petitioner failed to satisfy the reasonable basis requirement of the Vaccine Act when the claim was filed on December 1, 2022.

Here, Respondent's objection to reasonable basis is that Petitioner's claim is not supported by evidence that demonstrates he sustained a medically recognizable diagnosis. In response and in arguing that he did have a reasonable basis, Petitioner's counsel stated that his client first presented to him on November 28, 2022, indicating he received the Tdap vaccine on November 30, 2019, and that his first symptoms occurred within the first week of vaccination. Pet'r's Reply at 4. Petitioner told his counsel "that his current physician opined regarding a causal connection between the [Tdap] vaccine and Petitioner's symptoms." *Id.* Given this information and the "extremely limited time to investigate the case and obtain medical records before the filing deadline," Petitioner's counsel moved forward with filing the petition within three days of being contacted by Petitioner "so as not to time bar Petitioner's claim." *Id.*

The Federal Circuit has explicitly stated that determining whether there is a reasonable basis for a claim "is an objective inquiry unrelated to counsel's conduct." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir., 2017) (finding that special masters must not consider subjective factors in determining whether a claim has a reasonable basis). "In other words, the efforts that an attorney makes to investigate a claim or to ensure that a claim is asserted before the expiration of the statutory limitations period has no bearing on whether there is a reasonable basis for the claim itself; rather, such efforts are properly evaluated in determining whether a petition was brought in good faith." *Amankwaa*, 138 Fed. Cl. at 289; *see also Crowding v. Sec'y of Health & Hum. Servs.*, No. 16-876V, 2019 WL 1332797 (Fed. Cl. Spec. Mstr. Feb. 26, 2019) (Evaluation of reasonable basis "does not include consideration of the statute of limitations period or any directly related conduct by counsel.").

The "elimination of statutory limitations deadlines and the conduct of counsel as factors that can be considered to determine whether there is a reasonable basis for a claim does not preclude special masters from considering a variety of other factors in their reasonable-basis determinations." *Amankwaa*, 138 Fed. Cl. at 289. "Indeed, their analyses may include an examination of a number of objective factors, such as the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Id.*; *see also Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at \*7 (Fed. Cl. Jan. 5, 2018) ("[I]n deciding reasonable basis the Special Master needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery. . . . Under the

---

[7] While I have reviewed all of the information filed in this case, only those filings and records that are most relevant to the decision will be discussed. *Moriarty v. Sec'y of Health & Hum. Servs.*, 844 F.3d 1322, 1328 (Fed. Cir. 2016) ("We generally presume that a special master considered the relevant record evidence even though he does not explicitly reference such evidence in his decision.") (citation omitted); *see also Paterek v. Sec'y of Health & Hum. Servs.*, 527 F. App'x 875, 884 (Fed. Cir. 2013) ("Finding certain information not relevant does not lead to—and likely undermines—the conclusion that it was not considered.").

objective standard articulated by the Federal Circuit in *Simmons*, the Special Master should have limited her review to the claim alleged in the petition to determine if it was feasible based on the materials submitted.").

Accordingly, Petitioner's subjective argument regarding his "extremely limited time to investigate" the case in support of reasonable basis is unfounded and I must look at the objective evidence.

The Federal Circuit in *Cottingham* stressed the *prima facie* petition requirements of section 300aa-11(c)(1) of the Vaccine Act to establish reasonable basis. 971 F.3d at 1345–46. Specifically, the petition must be accompanied by an affidavit and supporting documentation showing that the vaccinee:

(1) received a vaccine listed on the Vaccine Injury Table;
(2) received the vaccination in the United States, or under certain stated circumstances outside the United States;
(3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;
(4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
(5) has not previously collected an award or settlement of civil action for damages for the same injury.

*Id.*; *see also Lombardi v. Sec'y of Health & Hum. Servs.,* 656 F.3d 1343, 1353 (Fed. Cir. 2011) (The Vaccine Act "places the burden on the petitioner to make a showing of at least one defined and recognized injury."). Here, Respondent's objection to reasonable basis is that Petitioner's claim is not supported by evidence that demonstrates he sustained a vaccine-related injury. Respondent focuses on the collection of symptoms alleged by Petitioner in arguing he failed to establish at least one defined and recognized injury and asserting the claim is therefore infeasible.

Although "it is not necessary for petitioner to substantiate the entirety of [his] allegations in order to have had a reasonable basis for the filing of [his] petition," Petitioner must submit "more than a mere scintilla" of objective evidence in support of his claim. *H.D. v. Sec'y of Health & Hum. Servs.*, No. 19-871V, 2024 WL 2034219, at *5 (Fed. Cl. Spec. Mstr. Apr. 8, 2024); *James-Cornelius*, 984 F.3d at 1379. In fact, the Federal Circuit has specifically held that "[m]edical records can support causation [for reasonable basis] even where the records provide only circumstantial evidence of causation" for entitlement. *Cottingham*, 971 F.3d at 1346.

Here, however, not only were no medical records filed with the petition, pursuant to billing records, counsel did not even review any medical records (or proof of vaccination) until two days after the petition was filed. *See* Pet'r's Mot., Ex. 2 at 1. Billing records indicate Petitioner called and left counsel a *voicemail* regarding the vaccine-injury claim on November 28, 2022, and the petition was drafted and filed on December 1, 2022. *Id.*; Pet. There are no billing records in between those dates. Thus, at the time of filing the petition, there was not a mere scintilla of objective evidence, or any evidence in support of his claim.

11

Even upon looking at the medical records, they do not provide a mere scintilla of evidence of a vaccine-related injury or any recognizable injury. On November 30, 2019, Petitioner received the subject Tdap vaccination. Petitioner swore that within the first week following vaccination, he began experiencing symptoms such as loss of patience, loss of interest in life, being easily angered, loss of taste, loss of thirst, and insomnia. *See* Pet'r's Exs. 1, 6. Petitioner stated he began treating for those symptoms with Dr. Pate "regularly since shortly after receiving the tetanus vaccine in November 2019." Pet'r's Ex. 1 at ¶ 6. These statements are not supported by the medical records.

The first time Petitioner sought medical attention after his vaccination was nine months later on August 20, 2020. On that date, he presented to his naturopathic provider, Dr. Pate, reporting "not too much of a change in past few years." Pet'r's Ex. 7 at 1. He also reported that he "hasn't had much interest in doing much *recently*." *Id.* (emphasis added). It was not until two years later, after Petitioner read an article about vaccine-related injuries, that he returned to Dr. Pate for concerns of a vaccine-related injury. *See* Pet'r's Ex. 6 at ¶ 6. He complained of "significant personality change" that occurred "quickly" after vaccination and had not improved. Pet'r's Ex. 4 at 19. Yet Petitioner did not report these concerns at his first visit post vaccination, albeit nine months after vaccination. Petitioner himself then acknowledged that it was only after the filing of his petition and at the suggestion of counsel did he visit neurologist Dr. Houser. *See* Pet'r's Ex. 6 at ¶ 9

The Federal Circuit was clear that reasonable basis may be evaluated case by case, and they recently reiterated that an "objective, totality of the circumstances test comports with [their] jurisprudence, [although] it is not required." *Sheller v. Sec'y of Health & Hum. Servs.*, 121 F.4th 1301, 1306 (Fed. Cir. 2024) (citing *Cottingham*, 971 F.3d at 1346).

It is in consideration of all of these facts and circumstances that I find that Petitioner's claim did not have a reasonable basis at the time of filing, and he is therefore not entitled to attorneys' fees and costs.

### B. Good Faith

Respondent also raised concerns related to good faith in a footnote.[8] For the reasons stated above regarding the statute of limitations and Petitioner's belief as expressed to counsel regarding his alleged vaccine-injury, I find good faith existed at the time of filing the petition. However, this alone is not enough for an award of attorneys' fees and costs.

## VII.   Conclusion

For the reasons stated above, I find that Petitioner's claim did not have a reasonable basis, and he is therefore not entitled to fees and costs.

---

[8] In the future, if Respondent has objections to good faith, such arguments should be expressed with the same factual and legal support as any other argument to be considered for determination.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of the above Decision.[9]

**IT IS SO ORDERED.**

s/Herbrina D. S. Young
Herbrina D. S. Young
Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment is expedited by the parties' joint filing of a notice renouncing the right to seek review.